United States District Court
District of Massachusetts

| | |
|---|---|
| JOSE DANIEL GUERRA-CASTANEDA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | Civil Action No. <br> 22-10711-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Jose Daniel Guerra-Castaneda ("Guerra-Castaneda" or "plaintiff") brings this action against the United States of America ("the government" or "defendant") for negligence, negligent infliction of emotional distress, and wrongful deportation pursuant to the Federal Tort Claims Act ("FTCA"). Guerra-Castaneda alleges that the government wrongfully removed him in violation of a mandatory stay order entered by the First Circuit Court of Appeals ("the First Circuit") and that he suffered injuries as a result.

Although the government admits that it removed plaintiff in violation of such a stay, it has moved to dismiss his complaint for lack of subject matter jurisdiction and failure to state a claim (Docket No. 15). For the reasons that follow, the motion will be denied, in part, and allowed, in part.

I. **Background**

   A.  **The Order of Removal**

Plaintiff Guerra-Castaneda is a Salvadoran national residing in Massachusetts. He crossed the United States border into Texas in June, 2015, and immediately was taken into custody by the U.S. Customs and Border Protection. In July, 2015, the U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") commenced removal proceedings against Guerra-Castaneda in Houston, Texas. Plaintiff paid the bond for his conditional release and moved to New Bedford, Massachusetts. His removal proceedings were transferred to the Boston Immigration Court, a component of the Executive Office for Immigration Review, located in Boston, Massachusetts.

Guerra-Castaneda lived in Massachusetts for three years, during which time he obtained a Salvadoran passport, a work permit from U.S. Citizenship and Immigration Services and a Massachusetts driver's license. In 2018, the International Criminal Police Organization, i.e. INTERPOL, issued a "Red Notice" for his arrest based upon a homicide he allegedly committed in El Salvador and his purported membership in MS-13. ICE apprehended Guerra-Castaneda and placed him in immigration detention.

In proceedings before the Boston Immigration Court, plaintiff asserted multiple grounds for asylum and the withholding of removal, including that his credible fear of torture by Salvadoran authorities if he were to be deported entitled him to relief under the Convention Against Torture ("CAT"). On January 8, 2019, Guerra-Castaneda's claims were denied by the Boston Immigration Court and an order was entered that he be removed to El Salvador. His appeal was denied by the Board of Immigration Appeals ("BIA") in June, 2019.

**B.  The Wrongful Removal**

On July 23, 2019, Guerra-Castaneda appealed to the First Circuit. On August 19, 2019, the government filed a notice of intent to deport plaintiff to El Salvador. ICE scheduled his transfer to Louisiana on September 3, 2019, and ultimate removal from the United States on September 6, 2019. At that time, plaintiff was detained at the Strafford County Department of Corrections in Dover, New Hampshire.

Guerra-Castaneda filed an emergency motion to stay removal on August 29, 2019. The government filed its opposition the following day. On August 30, the First Circuit entered an order granting a temporary stay of removal until September 13, 2019, so that it could review the substance of plaintiff's motion in full. On September 11, 2019, the First Circuit entered an order granting a full stay of removal until its review of Guerra-

Castaneda's motion was complete. Counsel for the government received notice and service of those orders.

Meanwhile, Guerra-Castaneda had already been transferred to Louisiana, on September 3, 2019, for staging prior to his previously scheduled removal. Although his file reflected that he should not be deported on September 6 because of the temporary stay, it also noted that he could be deported on September 13 after the temporary stay expired. Despite the entry of the full stay order by the First Circuit, Guerra-Castaneda was informed by ICE employees in Louisiana on September 12, 2019, that he would be removed to El Salvador the following day unless they received confirmation that he should not be. Plaintiff told ICE about the full stay order which had been entered by the First Circuit and alerted his immigration counsel about his situation.

Government's counsel did not inform the ICE Boston Field Office of the First Circuit's entry of a full stay until the evening of September 12, the day after the First Circuit had entered the order. The Boston Field Office did not update plaintiff's file until the morning of September 13. At that point, ICE officers in Louisiana had already transported Guerra-Castaneda to the designated flight and removed him to El Salvador pursuant to the superseded temporary stay of removal that was to expire on September 13, 2019.

After his wrongful removal to El Salvador, Guerra-Castaneda was transferred to the custody of the Salvadoran police and purportedly taken to a prison, Bartolinas de Cajutepeque, where he was held in a cell which contained more than 50 other detainees. He alleges that he was regularly assaulted and degraded by Salvadoran military personnel, became dehydrated and developed an infection, was denied medicine and was tortured for refusing to sign an admission of guilt. Plaintiff was released from prison after nearly 300 days in detention. The criminal charges against him were dropped but Guerra-Castaneda was unable to return to the United States until November 3, 2020, more than one year after his wrongful removal.

Plaintiff filed a complaint to initiate the pending action on May 10, 2022. In August, 2022, the government moved to dismiss that complaint for lack of subject matter jurisdiction and failure to state a claim which defendant timely opposed.

## II.  Motion to Dismiss

### A. Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if,

after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may consider certain categories of documents extrinsic to the complaint "without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  For instance, a court may consider documents of undisputed authenticity, official public records, documents central to a plaintiff's claim and documents that were sufficiently referred to in the complaint.[1] Watterson, 987 F.2d at 3.

A court may not disregard properly pled factual allegations in the complaint even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12.  Rather, the court's inquiry must focus on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

---

[1] Although the government has filed a "Statement of Undisputed Facts" (Docket No. 17) which purports to contain certain undisputed facts pertinent to its motion to dismiss, it would be both unnecessary and premature to convert the pending motion into a motion for summary judgment under Fed. R. Civ. P. 56.

In evaluating a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a court must determine whether the facts alleged in the complaint support subject matter jurisdiction when "taken at face value". Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017). Dismissal of the case is justified only if there is "no colorable hook [] upon which subject matter jurisdiction can be hung." Royal v. Leading Edge Prods., 833 F.2d 1, 1 (1st Cir. 1987). A motion to dismiss for lack of subject matter jurisdiction should ordinarily be resolved before a court "may address the merits of a case." Donahue v. City of Bos., 304 F.3d 110, 117 (1st Cir. 2002).

**B.  Subject Matter Jurisdiction**

   **1.  8 U.S.C. § 1252(g)**

Section 1252(g) of Title 8 of the United States Code provides that

> no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

The parties dispute whether § 1252(g) deprives this Court of jurisdiction over the claims brought by plaintiff pursuant to the FTCA concerning his wrongful removal from the United States in violation of a mandatory stay order entered by the First

Circuit.  The question of whether a court has jurisdiction to hear claims brought by a non-citizen who was subject to wrongful removal is a novel one in the First Circuit.  Several other circuit courts have, however, addressed the question and arrived at differing conclusions.

The Circuit Courts of Appeals for the Sixth and Ninth Circuits hold that claims brought by a wrongfully removed non-citizen do not fall within the jurisdiction-stripping ambit of § 1252(g). See Enriquez-Perdomo v. Newman, 54 F.4th 855, 863-64 (6th Cir. 2022) ("[Section] 1252(g) does not preclude [plaintiff's] claims because her removal order was not executable."); Arce v. United States, 899 F.3d 796, 800 (9th Cir. 2018) ("A decision or action to violate a court order staying removal [] falls outside of the statute's jurisdiction-stripping reach.").

To the contrary, the Fifth and Eighth Circuit Courts of Appeals hold that § 1252(g) applies to such circumstances and deprives courts of jurisdiction. See Foster v. Townsley, 243 F.3d 210, 214-15 (5th Cir. 2001) (holding that plaintiff's claim concerning deportation despite an automatic stay was "within the ambit of section 1252(g)"); Silva v. United States, 866 F.3d 938, 940 (8th Cir. 2017) ("Although the execution of this removal order happened to be in violation of a stay, the alien's

claims are directly connected to the execution of the removal order.").

Statutory interpretation begins with the text and is guided by a court's responsibility "to effectuate congressional intent." City of Providence v. Barr, 954 F.3d 23, 31 (1st Cir. 2020) (citations omitted). Terms and phrases used in a statute are, in the absence of a particular statutory definition, construed according to their "plain and ordinary meaning". Id. The First Circuit has further explained that

> [t]he context surrounding a statutory provision and the structure of the statutory scheme as a whole often provide useful indicators of congressional intent.

Id. (citations omitted).

Section 1252(g) deprives courts of jurisdiction over claims "arising from the decision or action" of the Attorney General to "execute removal orders" and two other specific kinds of actions. It clearly does not apply to claims arising from the decision or action to remove an alien in the absence of an existing removal order for the Attorney General to execute. See Enriquez-Perdomo, 54 F.4th at 863 (considering § 1252(g) and concluding that it refers to "existing and enforceable removal orders subject to execution").

The legal effect of a stay of a removal order is not a

> coercive order against the Government, but rather [] the temporary setting aside of the source of the Government's authority to remove.

Nken v. Holder, 556 U.S. 418, 429 (2009) (emphasis added). Such an order returns the parties to the state of affairs that existed "before the removal order was entered." Id.

Thus, the government had no authority to execute a removal order with respect to Guerra-Castaneda because there was no extant removal order for it to carry out. Id.  Plaintiff's claims therefore arise out of the government's violation of a stay order entered by the First Circuit. See Arce, 899 F.3d at 800 (holding that plaintiff's claims "arise not from the execution of the removal order, but from the violation of our court's [stay] order").  The plain meaning of § 1252(g) does not extend to the government's removal of a non-citizen in the face of a court order precluding its authority to do so.

Defendant contends that "arising from" is a broad phrase which requires an analysis of whether the execution of a removal order was the "but for" cause of plaintiff's alleged harms. Capacious phrases such as "arising from" should not, however, be interpreted according to an "uncritical literalism". Jennings v. Rodriguez, 138 S. Ct. 830, 840-41 (2018) (explaining that § 1252(g) refers only to the three specific actions that are listed and does not "sweep in any claim that can technically be said to arise from" those actions).

There is ample precedent from the United States Supreme Court which addresses the statutory scheme of § 1252(g) and the

intended scope of the provision. See City of Providence, 954 F.3d at 31-32. In Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC"), the Supreme Court recognized that § 1252(g) is "much narrower" than a deprivation of jurisdiction over "all claims arising from deportation proceedings." 525 U.S. 471, 482 (1999). Rather, it is directed "against a particular evil": improper judicial constraints on the Attorney General's "prosecutorial discretion" with respect to the three discrete areas, including the execution of removal orders, listed in the provision. AADC, 525 U.S. at 482-85 n.9; see also Jennings, 138 S. Ct. at 841.

A myriad of other decisions and actions that might sometimes occur during the deportation process do not fall within the scope of the statute. AADC, 525 U.S. at 482; see also Dep't of Homeland Sec. v. Regents of Univ. of Calif., 140 S. Ct. 1891, 1907 (2020) (holding that § 1252(g) is "narrow" and does not impose a "general jurisdictional limitation"). It would be contrary to congressional intent for this Court to append additional actions and decisions to the statute's specific limitations and thus find that it has been stripped of jurisdiction in the pending case.

Furthermore, even under the expansive construction of the phrase "arising from" advocated by the government, the harms alleged here would not fall within the scope of § 1252(g).

Plaintiff's claims arise from a "decision or action" – the wrongful removal of the plaintiff in violation of a court order – that occurred under circumstances in which the Attorney General could not execute a removal order because there was no operative removal order to execute.  Thus, Guerra-Castaneda has not, as the government suggests, simply characterized an event occurring after the execution of a removal order as the essential act underlying his claims.

Because the Court finds that § 1252(g) does not apply to claims brought by a plaintiff who was wrongfully removed in violation of a court order, it is unnecessary to address the broader, and more divisive, issue of whether § 1252(g) applies to both discretionary and non-discretionary acts or only to the former. See, e.g., Enriquez-Perdomo, 54 F.4th at 865 (explaining that the panel need not "take a position on the circuit split regarding whether § 1252(g) applies only to discretionary decisions and actions").

    **C. Recovery Pursuant to the Federal Tort Claims Act**

        **1. The Foreign Country Exception**

Under the FTCA, the government has consented to suit where a plaintiff's

> injury or loss of property, or personal injury or death [was] caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a

> private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The foreign country exception to the FTCA provides, however, that the government does not consent to suits based upon "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). The parties dispute whether plaintiff's claims are subject to the foreign country exception in view of the Supreme Court's decision in Sosa v. Alvarez-Machain, 542 U.S. 692 (2004). According to the government, Guerra-Castaneda's claims are premised upon his alleged mistreatment and injuries in El Salvador and thus are barred by the foreign country exception. Guerra-Castaneda responds that the "last act necessary to establish liability", Sosa, 542 U.S. at 705, occurred in the United States when he was embarked on a plane in Louisiana by ICE and removed from the country.

The Sosa Court explained that Congress enacted § 2680(k) in order to "avoid application of foreign substantive law" and held that the provision refers to claims based upon foreign injury regardless of where the underlying tortious act or omission occurred. Id. at 707-12. In Sosa, the Supreme Court rejected the "headquarters doctrine" which had previously allowed FTCA claims in cases where decisions or guidance originating within

the United States led to activities and injuries in a foreign country. Id. at 701-04.

In the case at bar, plaintiff has alleged more than a tortious act or omission within the United States and an injury in El Salvador. Rather, he has alleged that his primary injury occurred in the United States at the time the government forced him to board a plane in Louisiana and deported him without an order of removal authorizing it to do so. Several courts have held that the foreign country exception does not apply to similar allegations because the plaintiff was injured domestically. See, e.g., Arce, 899 F.3d at 801 n.5 ("[Plaintiff's] injury clearly occurred in the United States when the government removed him from [the United States] and deported him[.]"); Lyttle v. United States, 867 F. Supp. 2d 1256, 1301 n.18 (M.D. Ga. 2012).

Whether certain of Guerra-Castaneda's alleged damages may not be recoverable because they arose in El Salvador depends upon factual determinations which cannot be made at the pleadings stage and, in any event, would not require dismissal of the entire litigation. See, e.g., Lyttle, 867 F. Supp. 2d at 1301 n.18 (reserving for trial the issue of whether plaintiff's "damages for continuing harm that originated in the United States are recoverable").

### 2. Proximate Cause

The government suggests that its violation of the stay order of the First Circuit was not the proximate cause of plaintiff's injury at the hands of authorities in El Salvador even though it was a "necessary link" leading to his alleged injuries. In order to establish that a defendant's negligent conduct was a proximate cause of one's injuries under Massachusetts law, a plaintiff must show that those injuries fell within the "reasonably foreseeable risks of harm created by the defendant's negligent conduct." Staelens v. Dobert, 318 F.3d 77, 79 (1st Cir. 2003) (citing Kent v. Commonwealth, 437 Mass. 312, 320, 771 N.E.2d 770 (2002)); see also Jorgensen v. Massachusetts Port Auth., 905 F.2d 515, 522-23 (1st Cir. 1990).

In its memorandum in support of dismissal, the government contends that the complaint does not sufficiently allege proximate cause. The complaint does, however, contain well-pled factual allegations that the injuries Guerra-Castaneda suffered in El Salvador were reasonably foreseeable. He alleges that he was beaten and tortured by Salvadoran authorities and denied food, water and medical treatment. Those are precisely the kind of injuries which motivated plaintiff to resist removal and seek relief under the CAT in the proceedings before the Boston Immigration Court, the BIA and the First Circuit.

The government also advocates that the foreseeability of harm alone does not render its wrongful removal a proximate cause of Guerra-Castaneda's injuries. It contends that the deportation did not cause plaintiff's injuries and that it should not be held liable for injuries caused by the conduct of a third-party, i.e. the Salvadoran authorities, over which it had no control. There may be more than one proximate cause of an injury, however, and multiple links of the causal chain may be "substantial enough and close enough" to be recognized as such. Sosa, 542 U.S. at 704.

Furthermore, the intervening conduct of a third party does not preclude the liability of a defendant where that intervening conduct is itself foreseeable. See Staelens, 318 F.3d at 79. The government's analogy to a passenger who is dropped off in a dangerous neighborhood by an unlicensed driver and later shot is apt only if the driver was specifically forewarned about the risk to the passenger and ordered not to drop him off in the neighborhood. The Court cannot conclude that the wrongful removal of plaintiff was not a proximate cause of his injuries at this stage of the proceedings.

### 3. Comparative Private Liability

The government submits that it cannot be held liable under the FTCA because there is no private analogue to the allegations

concerning plaintiff's wrongful deportation here.  The FTCA provides that the government is subject to tort liability

> in the same manner and to the same extent as a private individual under like circumstances.

28 U.S.C. § 2674.  Thus, there is no liability where the government fails to fulfill a federal statutory duty to which there is no "comparable common law principle". Sea Air Shuttle Corp. v. United States, 112 F.3d 532, 536-37 (1st Cir. 1997). In Sea Air, the First Circuit held there was no liability under the FTCA when the Federal Aviation Agency failed to seek a discretionary, regulatory remedy because it was a purely governmental function which did not "give rise to an enforceable duty to any individual victim". Id. at 537.

The limitation on governmental liability imposed by the phrase "under like circumstances" does not, however, allow claims only where a private actor could have participated in and been liable for conduct under the "same circumstances" as the government. See United States v. Olson, 546 U.S. 43, 46–47 (2005) (citations omitted).  Although the government is correct that a private individual would never have occasion to remove a non-citizen wrongfully, this Court must "look further afield" to evaluate whether Massachusetts tort law would impose a duty on a private person in a comparable circumstance. Id. at 46; see also Indian Towing Co. v. United States, 350 U.S. 61, 64-65 (1955)

(rejecting the argument that there can be no liability under the FTCA for the negligent performance of "uniquely governmental functions").

A cause of action for negligence may stand against a defendant who violates a duty to another person "to act with reasonable care to prevent harm" caused by a third party. Irwin v. Town of Ware, 392 Mass. 745, 760, 467 N.E.2d 1292, 1302-03 (1984) (noting that such a duty "has been recognized for public employees as well as private individuals").  Guerra-Castaneda avers that the government owed him a duty of care because it held him in its custody and had a special relationship with him. See Sea Air, 112 F.3d at 537 (holding that the FTCA requires a relationship between the governmental employee and the plaintiff "to which state law would attach a duty of care in purely private circumstances"); see also Williams v. Steward Health Care Sys., LLC, 480 Mass. 286, 296, 103 N.E.3d 1192, 1200 (2018) ("A special relationship arises out of the level of control exercised by the custodian.")

Plaintiff further alleges that the government violated its duty to him by wrongfully deporting him and thereby exposing him to foreseeable injuries from a third party.  Plaintiff's allegations would constitute a cognizable claim against a private person who breached a duty of care to him in comparable

circumstances and thus the Court will not dismiss his claims for negligence or negligent infliction of emotional distress.

### 4.  Wrongful Deportation

Guerra Castaneda has also asserted a tort claim against the United States for "wrongful deportation".  There is, however, no tort of wrongful deportation under Massachusetts law and, notwithstanding the occasional willingness of Massachusetts state courts to "recognize new tort claims[,]" the Court will not do so here on their behalf.  Thus, plaintiff's claim for wrongful deportation will be dismissed.

### ORDER

For the foregoing reasons, the motion to dismiss of defendant for lack of subject matter jurisdiction (Docket No. 15) is **DENIED**.  The motion to dismiss for failure to state a claim is, as to Count III, **ALLOWED**, but is otherwise, **DENIED**. **So ordered.**

  /s/ Nathaniel M. Gorton  
Nathaniel M. Gorton  
United States District Judge

Dated:  February 16, 2023